IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MARYLAND

BIOCONVERGENCE LLC,
d/b/a SINGOTA SOLUTIONS,                    *
                                            *
    *Plaintiff*,                               *
                                            *
v.                                          *        Civil Case No: 1:21-cv-01959-CCB
                                            *
EMERGENT BIOSOLUTIONS,
INC. et al,
                                            *
    *Defendants.*

  *    *    *    *    *    *    *    *    *    *    *

## MEMORANDUM OPINION AND ORDER

This case was referred to the undersigned by Judge Blake of this Court on May 11, 2023, for discovery and all related scheduling.  (ECF No. 57).  This referral was prompted by two related motions for protective orders filed by Plaintiff, BioConvergence LLC d/b/a Singota Solutions ("Singota" or "Plaintiff") on April 25, 2023.  (ECF Nos. 51 & 52).  This Memorandum Opinion and Order concerns Plaintiff's Motion for Entry of Protective Order to Protect Confidential Information (ECF No. 51).  Specifically, this Motion concerns Plaintiff's objection to the dissemination of discovery material classified as "attorneys'-eyes- only" ("AEO") to Defendants' designated in-house counsel.  The Court has reviewed the parties' respective filings on the issue (ECF Nos. 51, 56, & 59).  Furthermore, the Court held an in-person hearing on June 6, 2023.  As set forth more fully below, Plaintiff's Motion (ECF No. 51) is DENIED, and the parties shall submit a proposed protective order for the Court's approval in compliance with this Memorandum Opinion and Order by June 14, 2023.

## I.    BACKGROUND

As indicated above, this Memorandum Opinion and Order addresses the first (ECF No. 51) of two discovery Motions which Plaintiff filed on April 25, 2023.  (ECF Nos. 51 & 52).  The Court has provided an overview of this case's relevant facts and history in a separate filing addressing ECF No. 52.[1]  As such, the Court will not rearticulate the history of this case here.  For purposes of this Motion, it is sufficient to acknowledge that "[t]his litigation involves allegations that [Plaintiff's] confidential information and trade-secret information was misappropriated by a former . . . employee [of Plaintiff] who went to work for Defendants."  (ECF No. 51 at p. 5).[2]

Put simply, "the parties are at an impasse regarding whether documents and information subject to the [AEO] designation can be accessed by [certain] in-house counsel[]" for Defendants.  (ECF No. 56 at p. 1).  Plaintiff maintains that it "cannot agree to produce its AEO materials to Defendants' in-house counsel due to legitimate concerns regarding the protection of its confidential business information."  (ECF No. 51 at p. 1).  Although Defendants employ in-house counsel, Plaintiff does not.  *Id.* at p. 2.  In its Motion, Plaintiff argued that Defendants' "[i]n-house counsel *may have* business related responsibilities and report to work with business personnel. Thus, it would be impossible for in-house counsel to separate its business responsibilities and its legal responsibilities in this litigation."  *Id.* at p. 3 (emphasis added).  In turn, Defendants argued in their Opposition that Plaintiff is asking the Court to inappropriately "restrict in-house counsel's access **based solely** upon their status as an employee of Defendants."  (ECF No. 56 at p. 3) (emphasis in original).  Finally, in its Reply, Plaintiff argued that Defendants cannot show how

---

[1] ECF No. 52 concerns Plaintiff's objections to Defendants' second amended notice of Fed. R. Civ. P. 30(b)(6) deposition.  The Court's Memorandum Opinion and Order addressing that motion will be filed along with this Memorandum Opinion and Order.

[2] When the Court cites to a specific page number or range of page numbers, the Court is referring to the page numbers provided in the electronic filing stamps located at the top of every electronically filed document.

they would be prejudiced without in-house counsel having access to AEO material, nor have Defendants provided the Court with any information regarding in-house counsel's involvement in competitive decision-making.  *See* (ECF No. 59).

## II.        LEGAL STANDARD

"To prevent undue burden and expense, the court may[—for good cause—]issue a protective order 'requiring that a trade secret or other confidential research, development, or commercial information not be revealed or be revealed only in a specified way.'"  *M–Edge Accessories LLC v. Amazon.com Inc.*, MJG-11-332, 2013 WL 12241898, at *2 (D. Md. May 14, 2013) (citing Fed. R. Civ. P. 26(c)(1)(G)); *Layne Christensen Co. v. Purolite Co.*, 271 F.R.D. 240, 248 (D. Kan. 2010).  "Under Rule 26, a party seeking to limit the manner in which information is disclosed to a competitor must show that the documents sought actually concern trade secrets or other confidential research, development, or commercial information, and that disclosure might be harmful."  *Amazon.com Inc.*, 2013 WL 12241898 at *2 (citing *Layne Christensen Co.*, 271 F.R.D. at 248–49).  "If the requesting party meets this burden, 'the burden then shifts to the party seeking unrestricted disclosure to establish that disclosure is relevant and necessary to the action.'"  *Amazon.com Inc.*, 2013 WL 12241898 at *2 (quoting *Layne Christensen Co.*, 271 F.R.D. at 248–49).  However, "the determination of whether a particular individual should have access to a competitor's highly confidential documents turns on whether that individual is 'involved in competitive decisionmaking[.]'"  *Amazon.com Inc.*, 2013 WL 12241898 at *3 (citing *U.S. Steel Corp. v. U.S.*, 730 F.2d 1465, 1468, n.3 (Fed. Cir. 1984)).

"The law on counsel's access to confidential material is governed by the over-arching principles set-out in [*U.S.*] *Steel Corp. v.* [*U.S.*], 730 F.2d 1465 (Fed. Cir. 1984)."  *MedImmune, Inc. v. Centocor, Inc.*, 271 F. Supp. 2d 762, 773 (D. Md. 2003).  "As pronounced by the Federal

Circuit, the policy underlying a restriction on counsel's access to confidential materials is the concern that counsel might inadvertently disclose the confidential material learned during the course of litigation." *Id.* (citing *U.S Steel Corp.*, 730 F.2d at 1468). "The competing interests to be evaluated in determining the outcome of such a dispute are one party's right to broad discovery and the other party's ability to protect its confidential materials from misuse by competitors." *MedImmune, Inc.*, 271 F. Supp. 2d at 773 (citing *Brown Bag Software v. Symantec Corp.*, 960 F.2d 1465, 1469–70 (9th Cir.), *cert. denied sub nom.*, *BB Asset Mgmt. v. Symantec Corp.*, 506 U.S. 869 (1992)). "The inquiry focuses on whether counsel can be deemed a 'competitive decision-maker[,]' which the Federal Circuit says is shorthand for 'a counsel's activities, association, and relationship with a client that is such as to involve counsel's advice and participation in any or all of the client's decisions (pricing, product design, etc.) made in light of similar corresponding information about a competitor.'" *MedImmune, Inc.*, 271 F. Supp. 2d at 773 (quoting *U.S. Steel Corp.*, 730 F.2d at 1468, n .3). "A counsel's title as 'in-house' or 'retained' will not be dispositive on the issue." *MedImmune, Inc.*, 271 F. Supp. 2d at 773 (other citation omitted). "In addition to determining whether a counsel is a competitive decision-maker, the Court must also analyze whether denying counsel access to confidential material would work substantial hardship on one of the parties." *Id.* (other citation omitted).

The court recognizes that the standard under which it is to determine the extent of the forthcoming protective order is not clear; specifically, the Court recognizes the confusion which arises as a result of language concerning how "the burden . . . shifts to the party seeking unrestricted disclosure to establish that such disclosure is relevant and necessary to the action." *Layne Christensen Co.*, 271 F.R.D. at 249. "To establish necessity, some courts have considered whether the proposed limitation on disclosure to certain individuals would impair the ability of the party

seeking full disclosure to proceed effectively with the litigation." *Id.* "Where the protection sought is only to prevent certain identified individuals from viewing the materials, such as in-house counsel . . . , the court must balance the risk of inadvertent disclosure of trade secrets to competitors against the risk to the other party that protection of these trade secrets will prejudice its ability to prosecute or defend the present action." *Id.* However, "it is well settled that [the party resisting disclosure] ha[s] the burden of proving the competitive harm that would befall [it] by virtue of . . . disclosure to in-house personnel . . . ." *MPG Ingredients, Inc., v. Mars, Inc.*, 245 F.R.D. 497, 502 (D. Kan. 2007) (other citations omitted). As such, the party resisting disclosure is "required to make a 'particular and specific demonstration of fact, as distinguished from stereotyped and conclusory statements.'" *Id.* (quoting *Gulf Oil Co. v. Bernard*, 452 U.S. 89, 102, n. 16 (1981)).

Fundamentally, the focus in this Circuit—as well as the focus in *U.S. Steel Corp.* and the multitude of cases depending on its holding—is to avoid an arbitrary distinction between in-house and outside counsel. Accordingly, the Court's substantial focus will be on whether Defendants' proffered in-house counsel whom Defendants wish to have access to AEO materials are competitive decision-makers.

## III.    ANALYSIS

To better understand whether Defendants' proposed in-house counsel are involved in competitive decision-making, the Court held a hearing on June 6, 2023. During the hearing, Plaintiff's counsel primarily argued that Defendants failed to demonstrate how allowing access by its in-house counsel to AEO confidential information is necessary to ensure Defendants' ability to adequately defend themselves in the case *sub judice*, or that denial of such access would unfairly prejudice Defendants. However, the Court's threshold focus is on whether the in-house counsel whom Defendants wish to involve in the dissemination of AEO materials are competitive decision-

makers.  As disclosed during the hearing, the two proposed in-house counsel—Eric Delossantos

and Carrie Babiasz—are involved exclusively in labor and employment matters.[3] Neither is on the

Board of Directors, and neither is an officer of the company.  According to counsel, they play no

role in matters beyond the labor and employment sphere.  *Cf. Saint Alphonsus Med. CTR. v. St.*

*Luke's Health Sys.*, No. 1:12-cv-00560-BLW-RE, 2013 WL 139324, at *4 (D. Idaho Jan. 10, 2023)

(denying access to in-house counsel where in-house counsel worked on completed deals within

the context of the hospital marketplace and necessarily had knowledge and involvement in

competitive decision-making); *Amazon.com*, 2013 WL 12241898 at *3 (finding that granting

access to a party's co-founder and CFO who was still involved in "operations, growth and

profitability[]" presented too great a risk of the party seeking disclosure gaining an unfair business

advantage as a result of disclosure); *Brown Bag Sotftware*, 960 F.2d at 1471 (finding that in-house

counsel's responsibility regarding advising his employer on "a gamut of legal issues, including

contracts, marketing, and employment[]" constituted the sort of competitive decision-making

which warrants non-disclosure).  Furthermore, neither of Defendants' proffered in-house counsel

work in close proximity with competitive decision-makers.  *Cf. Norbrook Lab'ys Ltd. v. G.C.*

*Hanford Mfg. Co.*, No. 5:03CV165(HGM/GLS), 2003 WL 1956214, at *4–5 (N.D.N.Y. Apr. 24,

2003) (finding that an individual who was not in-house counsel but held the position of corporate

secretary and was a member of the board of directors for the party seeking disclosure constituted

a situation in which there existed an unacceptable opportunity for inadvertent disclosure).

Accordingly, the Court finds that Defendants' proffered in-house counsel are not competitive

decision-makers deserving of exclusion from the dissemination of AEO material.  *See MGP*

*Ingredients, Inc.*, 245 F.R.D. at 501 (finding that the party resisting disclosure to in-house counsel

---

[3] At the time of this filing, the Court is without access to the official transcript of the June 6, 2023 hearing.  As such, the Court's spelling of Defendants' in-house counsels' names may be inaccurate.

failed to "meet their burden of proving that the lack of a two-tiered protective order will allow disclosure to a competitive decision maker . . . who will be virtually unable to compartmentalize the information and not use it to seek to gain an unfair competitive advantage.").[4]

Furthermore, the Court finds that the size and expanse of Defendants cut in favor of a finding of necessity in involving the proffered in-house counsel.  As the parties admitted during the hearing, Defendant Emergent, unlike Plaintiff, is a very large, multi-national company.  As such, the Court concludes that permitting Mr. Delossantos and Ms. Babiasz access to AEO information strikes an appropriate balance in the sense that having in-house contacts available to help navigate the organizational network of Defendants outweighs what appears to be a negligible risk of improper disclosure from two in-house counsel without any involvement in competitive decision-making and who, of course, will be bound as attorneys to the Court's order.

Additionally, the Court recognizes that Defendants have offered to implement an extensive electronic information barrier to combat inadvertent disclosure, i.e., AEO material will be (1) accessible only by named in-house counsel, (2) placed on a secure server, and (3) be password protected.  The Court finds that such measures will be a sufficient safeguard against inadvertent disclosure.  In so doing, the Court distinguishes the situation in the current case with *Brown Bag Software.*  There, the lower court did not take issue with in-house counsel's assurance that all confidential information would be "locked in a file cabinet in [counsel's] . . . office . . . ." *Brown Bag Software*, 960 F.2d at 1471.  Rather, the court was concerned with in-house counsel's proximity to  competitive decision-making and whether counsel could "lock-up trade secrets in his mind, safe from inadvertent disclosure to his employer once he had read the documents." *Id.*  Here,

---

[4] The court in *MFG Ingredients, Inc.* decided the issue of disclosure "under Rule 26(c)(7), which was the earlier but nearly identical version of Rule 26(c)(1)(g)[.]" *Layne Christensen Co.*, 271 F.R.D. at 248, n. 20.

the Court has already dismissed any notion of Mr. Delossantos' or Ms. Babiasz's involvement in competitive decision-making, and Defendants' proposed safeguards are significantly more thorough than locking AEO materials in a filing cabinet.  Accordingly, as further explained in the concluding remarks of this Memorandum Opinion and Order, the Court will accept Defendants' proposed safeguards.

Lastly, Plaintiff argues in the alternative that if Defendants are "permitted to have an internal employee access [Plaintiff's] AEO materials . . . then [Plaintiff] should be permitted to designate an internal employee to perform a similar function with respect to [Defendants'] AEO materials."  (ECF No. 59 at p. 3, n. 3).[5]  However, Plaintiff has not made a specific proposal in this regard such that the Court could engage in the appropriate analysis of whether the proposed contact is sufficiently removed from competitive decision-making so as to offset the risk of inadvertent disclosure.  The Court does not foreclose that avenue, but suggests that the parties confer and attempt to reach an agreement.

---

[5] Plaintiff cited to a bullet-point memorandum opinion issued by this Court on August 4, 2011: *Baney Corp. v. Agilysys NV, LLC*, Dkt. No. 8:10-cv-00683-AW at (ECF No. 63).  The Court notes that this filing is not located on Westlaw, nor does it provide substantial analysis on the issue of dissemination of AEO material to in-house counsel.  In *Baney Corp.*, the Court held that AEO material "may not be disclosed to the two in-house counsel employed by [d]efendant, as the Court finds that this would confer an unfair advantage upon [d]efendant, given that Plaintiff employs no in-house counsel." *Id.* at p. 2, ¶ 7.  However, this prior memorandum opinion provides no citation to caselaw, and it was decided after consideration of only two brief letters filed by counsel. *Id.* at (ECF Nos. 61 & 62).  The Court notes that the party seeking to resist disclosure in *Baney Corp.* conceded that "[a]bsent assurances that . . . designated in-house counsel are not involved in competitive decision-making, they should not have access to [AEO] materials because the likelihood of inadvertent disclosure and resulting harm to a disclosing party would be too great." *Id.* at (ECF No. 62 at p. 3) (citing *U.S. Steel Corp.*, 730 F.2d at 1465 (Fed. Cir. 1984)).  As discussed above, the case *sub judice* is not lacking in such assurances.

**IV.    CONCLUSION**

As described above, the dissemination of AEO material to Defendants' proffered in-house counsel—Mr. Delossantos and Ms. Babiasz—strikes an appropriate balance between the interests of the parties.  Accordingly, it is hereby ORDERED that:

1.  The parties shall jointly draft a proposed protective order in accordance with this Memorandum Opinion and Order.  The parties shall file such a protective order for the Court's approval by June 14, 2023; and

2.  The forthcoming proposed protective order must provide in thorough detail Defendants' anticipated course of action regarding the electronic safeguards it will utilize to ensure that access to the AEO material disclosed throughout discovery cannot escape the sole possession of Mr. Delossantos and Ms. Babiasz.

Date: <u>June 7, 2023</u>                              <u>            /s/            </u>
                                                 J. Mark Coulson
                                                 United States Magistrate Judge